LUCRETIA VROOMAN, by Sherman Armstrong, Jr., her next friend, Respondent, v. JOHN GRIFFITHS, Appellant.

A wife owning a farm, purchased with her own money, can employ her insolvent husband to work the same without impeaching her title to the issues and profits of the same.

It is in the discretion of the court or referee, to permit leading questions to be put to witnesses by the party calling them, though the opposite party object, and except to the same.

The wife owning a farm is as much entitled to the issues and profits thereof when worked by her insolvent husband, as when worked by any other insolvent. BALCOM, J.

THIS action was brought in the Supreme Court for the alleged wrongful taking and conversion by the defendant of the following property, which the plaintiff claimed was her "sole and separate property," to wit: three cows, two three year old steers, one yearling steer, three calves, one bull, one lumber wagon, one pleasure wagon, one pair of bob-sleighs, one set of double harness, two plows, two drags, one hay-rigging and one colt. The defense was, that the property belonged to Christian B. Vrooman, the husband of the plaintiff; and that the defendant was the sheriff of Ulster county, and took and sold the property by one of his deputies, by virtue of an execution against the property of Christian B. Vrooman, in favor of one Knapp, and that such execution was issued on a valid judgment in favor of the latter against the former, for $939.45, which was docketed in Ulster county on the 28th day of June, 1852.

The action was tried before a referee. The plaintiff proved that in the summer of 1851, David Vrooman, a brother of her husband, gave her $700. That she purchased a farm in the town of Olive, in the county of Ulster, on the 14th day of October, 1851, subject to some mortgages thereon. She paid $100, over and above the mortgages, for the farm and received a deed therefor. She shortly afterward moved upon the farm with her husband and family, where they remained and cultivated and occupied the farm until about the time the defendant, by one of his deputies, levied upon and sold the

above-mentioned property, by virtue of the above mentioned execution against the plaintiff's husband in the spring of 1855. *David Vrooman* testified, that he sold the pleasure wagon to the plaintiff for $20 after she purchased the farm, and that the wagon was worth $25. He stated that he took the plaintiff's notes for the wagon, which were paid six months or a year afterward. *Thomas Davis* testified, that he sold a brockle-faced cow to the plaintiff in August, 1854, which the defendant took and sold; that the plaintiff herself paid him, Davis, $15 toward the cow the next week after she bought it; that the rest of the purchase price stood a while, when the plaintiff's husband handed the same ($10) to him, Davis, and said, "That makes you and my wife square on the cow." That the plaintiff had previously promised him, Davis, to send him the $10; that this cow was worth $30. *Isaac B. Davis* testified, that he sold a steer to the plaintiff in the spring of 1853, for which, he thought, she paid him in the presence of her husband; that it was taken and sold by the defendant, and was worth $40. *Patrick Kernan* testified, that he sold a lumber wagon and a sleigh that went on to said farm, and was paid for by them in produce of the farm; that the husband of the plaintiff made the bargain for the plaintiff with him for such wagon and sleigh. The plaintiff spoke to the witness about this wagon after he had delivered it, but before he was fully paid for it. Another witness testified, that this wagon was worth $28 and the sleigh $18 at the time the defendant sold them.

The foregoing property was used on the farm from the time the same was purchased until about the time it was seized by the defendant.

The plaintiff's counsel asked a witness this question: "What was a fair rent for the farm per year?" The defendant's counsel objected to the same as irrelevant. The referee overruled the objection, and the defendant's counsel excepted. The witness answered, "It ought to rent for $140 or $150 a year." The witness had previously testified that the plaintiff's husband was engaged in no other business than working that farm while he lived there; that once in a while he

teamed it a little with the horses he had; not enough to make a business of it; that once in a while he would take a load to market.

It must have been evident to the referee that the defendant's counsel had been endeavoring to establish that the plaintiff paid for the pleasure wagon out of the produce of the farm and also lived on such produce. The defense questioned plaintiff's title to the farm and produce as well as her alleged title to the property in question.

The plaintiff admitted that the property in question was levied upon and sold by a deputy of the defendant, by virtue of the above mentioned execution, and that the defendant then was the sheriff of Ulster county.

When the plaintiff rested her case, the defendant's counsel moved for a nonsuit, on the ground that the property in question was the property of Christian B. Vrooman, and not the separate property of the plaintiff. The motion was denied, and the defendant's counsel excepted.

The plaintiff's counsel put this question to Isaac B. Davis: "Did she not pay the money herself for the steer?" The defendant's counsel objected to the same as leading. The referee overruled the objection, and the defendant's counsel excepted. The witness answered, "I think she did."

The defendant proved the judgment on which the execution was issued, and showed that it was obtained upon a former one that was recovered in June, 1841, and that such former judgment was recovered for an old debt. He also proved that the plaintiff was married to Christian B. Vrooman prior to the year 1841, who had been poor from that time.

David Vrooman was re-examined by the defendant's counsel, and stated that the plaintiff told him she bought the farm alluded to, and stocked it with the $700 he gave her; that the plaintiff and her husband had no place to go to, and were poor; that they had not been able to make a living; and he felt as though he could do something for "the family," and thought if he gave money to the plaintiff's husband his creditors could take it away, and the family would not be benefited by it. So he gave the $700 to the plaintiff, and

told her she had better buy land for it. It appeared that the plaintiff's husband had been a merchant, and had failed in business as early as 1841.

The referee found, among other things, that the $700 was given to the plaintiff; that she purchased the farm, and shortly after moved upon it with her husband and family, and continued there until about the time of the levy and sale by the defendant. That the plaintiff purchased and paid for the one pleasure wagon, bought of David Vrooman, worth $20; one cow, bought of Thomas Davis, worth $30; one steer, bought of Isaac B. Davis, worth $40; one wagon and sleigh (paid for by produce raised on the farm), bought of Patrick Kernan, worth $46; which property the defendant had taken and sold. That much, if not all, of the other property, mentioned in the complaint, was shown to have been bought or made by the plaintiff's husband, in his own name, and for his own use. His conclusions of law were as follows: "I find as conclusions of law, that the plaintiff having received the $700, by gift from a person other than her husband, after the passage of the act 'for the more effectual protection of the property of married women,' can hold the property in which she invested it, and its 'rents, issues and profits;' and the same is not liable for her husband's debts. That property bought by the husband with the proceeds of the labor of himself, wife and family, is his, and the presumption is in favor of the husband owning the personal property on the farm worked by him, when he has the management and control of it. That such presumption in this case has been overcome as to the property hereinbefore enumerated, but not as to the residue; and that the plaintiff, accordingly, is entitled to judgment for $136, with interest from April 11, 1855, amounting in all to $155.30."

The case states that, "the defendant's counsel duly excepted to each and every of the conclusions of the law stated in said report."

Judgment was entered upon the decision of the referee, against the defendant, with costs. He appealed to the General Term of the Supreme Court, in the third district,

where that court held the plaintiff was not entitled to recover for the lumber wagon and sleigh that were "paid for by produce raised on the farm," worth $46; and reduced the judgment to $102.81. The defendant then appealed from the latter judgment to this court.

*A. J. Parker*, for the plaintiff.

*Samuel Hand* and *John K. Porter*, for the defendant.

BALCOM, J.  The question presented by the motion for a nonsuit is, whether the evidence justified the referee in holding that any portion of the property which the defendant had taken and sold, belonged to the plaintiff. If it did he properly denied the motion; but if it did not he should have granted it.

The plaintiff did not prove where she obtained the identical money she paid to David Vrooman for the pleasure wagon, or to Thomas Davis for the cow which she purchased of him, or to Isaac B. Davis for the steer she had of him. But she proved that a brother of her husband had previously given her $700; and she had paid only $100 toward the farm which she bought in the town of Olive, and she was entitled to the rents, issues and profits of such farm "in the same manner and with like effect" as if she had been unmarried; and those rents, issues and profits were not liable for the debts of her husband. (Laws of 1849, p. 528, chap. 375.) She also showed that her husband was poor; and David Vrooman testified he did not think her husband had $2 in the world when he sold the pleasure wagon to her. These facts clearly authorized the inference that the plaintiff paid her own money for the pleasure wagon, cow and steer; and they justified the referee in holding that those articles were the property of the plaintiff at the time the defendant took them and sold them. The fact that her husband used them in carrying on her farm, for the benefit of himself and children, as well as herself, did not render them liable for his debts, or deprive her of the right to sue for the same when taken from the possession of her husband and converted without her consent. (*Sherman* v. *Elder*, 24 N. Y., 381.)

8

These views not only lead to the conclusion that the referee properly refused to nonsuit the plaintiff, but also show that the plaintiff was entitled to recover the value of the pleasure wagon, cow and steer.

We need not determine whether the plaintiff was entitled to recover the value of the lumber wagon and sleigh purchased of Patrick Kernan, and " paid for by produce raised on the farm ; " for she has not appealed from the determination of the Supreme Court rejecting her claim for those articles.

I am unable to see that it was material for the plaintiff to prove " what the fair rent " of the farm was per year. But I am of the opinion the evidence that the farm " ought to rent for $140 or $150 per year," did not prejudice the defendant at all on the trial. It was neither beneficial to the plaintiff nor prejudicial to the defendant. If, therefore, the referee erred in receiving such evidence the error should be wholly disregarded.

It rested in the discretion of the referee, whether he would permit the plaintiff's counsel to put the leading question to Isaac B. Davis, as to who paid him for one of the steers in dispute, and there was no abuse of such discretion.

The finding of the referee that the plaintiff " purchased and paid for" the articles of property, for which she has recovered, was tantamount to finding that she paid her own money therefor and owned the same, for such is the legal inference from these facts.

The facts found by the referee justified all his conclusions of law so far as they were sustained by the Supreme Court.

A wife risks no more by permitting an insolvent husband to occupy her real estate and use and manage her personal property, than a stranger does by permitting a bankrupt to do the like with his property. She is as clearly entitled to " the rents, issues, and profits" of her real estate, and the benefits of the ownership of her personal property, when occupied and used by her insolvent husband, as when occupied and used by any other insolvent person. She is not obliged to turn her husband out of her house, or off her land,

or prevent him using her personal property to save the same and all benefits accruing therefrom, from his creditors. These conclusions are so obviously just, they only need to be stated to be admitted to be correct. They are not only just, but equitable, and also legal.

For these reasons, I am of the opinion the judgment of the Supreme Court should be affirmed with costs.

    All the judges concurring,

    Judgment affirmed.